**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DRIGGERS ENGINEERING SERVICES INC.,

    Plaintiff,

v.                                          Case No: 8:14-cv-3155-T-30TBM

CNA FINANCIAL CORPORATION and
VALLEY FORGE INSURANCE COMPANY,

    Defendants.

## ORDER

THIS CAUSE comes before the Court upon Valley Forge Insurance Company's Motion for Judgment on the Pleadings (Dkt. #14) and Plaintiff's Memorandum in Opposition (Dkt. #18). Upon review and consideration, it is the Court's conclusion that the Motion should be granted.

*Background*

### I.  Procedural History

On November 20, 2014, Driggers Engineering Services, Inc. ("Driggers") filed this declaratory judgment action against Valley Forge Insurance Company ("Valley Forge") in the Circuit Court of the Twelfth Judicial Circuit, in and for Manatee County, Florida. On December 19, 2014, Valley Forge filed its notice of removal of civil action and its answer, affirmative defenses and counterclaim for declaratory relief.  On January 7, 2015,

Driggers filed its answer and affirmative defenses to Valley Forge's counterclaim. The pleadings are closed. Valley Forge now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Valley Forge issued a tailored commercial package policy number 2053853309 to Driggers, which includes commercial general liability coverage effective from August 10, 2007, through August 10, 2008, (the "Policy"). Driggers seeks insurance coverage under the Policy for two lawsuits filed against it alleging damage arising out of its allegedly defective or negligent roof test completed on or about April 5, 2008, at The Dunes condominium building in St. Petersburg Beach, Florida.

## II.     The Underlying Lawsuits

Driggers is a defendant in the underlying lawsuits styled *American Home Assurance Co., as subrogee of Franz Hanning v. Driggers Engineering Services, Inc., et al.*, Case No. 09-15163-CI, pending in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Civil Division, (the "American Home Lawsuit") and *Franz Hanning and Kelly Hanning v. Driggers Engineering Services, Inc., et al.*, Case No. 12-3726-CI, pending in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, (the "Hanning Lawsuit") (collectively the "Underlying Lawsuits"). The Underlying Lawsuits allege that in April 2008, Driggers negligently conducted a roof flood test and other activities on The Dunes condominium building which resulted in damage to the Hannings' condominium unit.

The American Home Lawsuit alleges that Driggers had a non-delegable duty to

> 1. Conduct a thorough pre roof test inspection and identify the unsealed lightning protection system.
>
> 2. Perform any work or tests on the roof in a safe manner, that would not cause damage to any of the condominiums; and
>
> 3. Monitor the condominium units while performing a test on the roof, to confirm that the units were not being damaged by the test.

The American Home Lawsuit alleges that Driggers breached these duties when it failed to:

> 1. Conduct a thorough pre roof test inspection and identify the unsealed lightning protection system.
>
> 2. Perform any work or tests on the roof in a safe manner, that would not cause damage to any of the condominiums; and
>
> 3. Monitor the condominium units while performing a test on the roof, to confirm that the units were not being damaged by the test.

The American Home Lawsuit ultimately alleges that as a result of the defective or negligent roof test performed by Driggers, the Hannings suffered extensive property damage. American Home paid insurance proceeds to the Hannings based on the terms of its insurance contract with them and seeks to recover those costs.

The Hanning Lawsuit alleges that "Driggers owed a non-delegable duty to the [Hannings] to provide its work in full compliance with a professional standard, … all applicable Building Codes and generally accepted construction practices, in accord with applicable designs, plans, and specifications and the applicable governing authorities

related thereto, and in accord with the flood testing procedures." Driggers allegedly breached these duties by its:

> (a) Negligent operation of a roof flood test of the condominium complex; and
>
> (b) Negligent or improper inspection of the lightening [sic] suppression system prior to performing the roof flood test; and
>
> (c) Negligent supervision of the installation and work of contractors, subcontractors, and sub-subcontractors so as to ensure adequate design, installation, and techniques to protect the HANNINGS['] Property from water intrusion; and
>
> (d) Negligent oversight of the roof flood test and inspection of units as required under the testing guidelines; and
>
> (e) Failure to follow the protocol described in the testing procedure; and
>
> (f) Improper performance of a roof flood test so as to allow water from a roof flood test to drain into the HANNINGS['] Property.

The Hanning Lawsuit alleges damages in the form of diminution of value of the condominium unit generally, and as a result of the stigma attached to reporting to future potential purchasers that the property suffered from water intrusion. These damages are not covered by their American Home policy and are specifically excluded from the settlement with American Home.

**III.   The Policy and its "Testing Exclusion"**

The Policy issued to Driggers covers

> …those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Valley Forge has] the right and duty to defend the insured against any "suit" seeking those damages. However, [Valley Forge has] no duty to defend the

4

> insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
> …

The Policy defines "property damage" to mean:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Policy contains a Testing or Consulting Errors and Omissions Exclusion (the "Testing Exclusion") which provides, in relevant part:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> 1. An error, omission, defect or deficiency in:
>
> a. Any test performed; or
>
> b. An evaluation, a consultation or advice given, by or on behalf of any insured; …

Driggers submitted the Underlying Lawsuits to Valley Forge to obtain defense coverage under the Policy. Valley Forge denied the claim asserting that the Testing Exclusion applied because the property damage allegedly suffered by the Hannings (and American Home as their subrogee) "arises out of" the allegedly negligent or defective performance by Driggers during the roof test. Valley Forge also cited to other reasons for denying the claim which are not at issue in this Motion.

5

*Discussion*

I. **Legal Standard**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. In evaluating a motion for judgment on the pleadings, a court will accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *See Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Id*.

II. **Duty to Defend**

An insurer's duty to defend is to be determined from the allegations in the complaint against the insured. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533 (Fla. 1977). The insurer must defend if the allegations in the underlying complaint could bring the insured within the policy provisions of coverage. *State Farm Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So. 2d 1184 (Fla. 1st DCA 1981), *rev. denied*, 413 So. 2d 877 (Fla. 1982). *See also Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp.*, 487 So. 2d 1051, 1054 (Fla. 1986) (a liability insurance carrier must defend the insured only when the initial pleadings fairly bring the case within the scope of coverage). If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit. *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So. 2d 253, 256 (Fla. 3d DCA 1978).

The duty to defend is separate and apart from the duty to indemnify and the insurer is required to defend the suit even if the true facts later show there is no coverage. *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So. 2d 611 (Fla. 4th DCA 1982). All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985); *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.,* 52 F.3d 1575, 1580 (11th Cir. 1995) (under Florida law, "[i]f an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured.")

"However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003) *review denied*, 885 So. 2d 389 (Fla. 2004). In Florida, it is well settled that courts strictly construe exclusionary clauses in liability insurance policies to allow the broadest coverage possible. *See Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997). The applicability of a policy exclusion is a matter of law that can be properly resolved on the pleadings. *See, e.g., Scottsdale Ins. Co. v. Pursley*, 487 Fed. Appx. 508, 511 (11th Cir. 2012).

It is undisputed that many of the allegations in the Underlying Lawsuits pertain to testing, and therefore fall within the Testing Exclusion. Neither party argues that the terms used in the Testing Exclusion are ambiguous. Driggers simply argues that all of the allegations do not fall within the exclusion, since the exclusion does not reference protocol, guidelines, procedures, or work performed in preparation of a test, before the test,

simultaneously with the test, inspections, or inspections of work performed by others (not the insured) in the vicinity of the test location. Therefore, Driggers argues, the allegations in the Underlying Lawsuits that pertain to its alleged negligence in the inspections completed prior to the test, failure to identify the unsealed lightning protection system, failure to monitor the condominium units during the test, and negligent supervision of sub-contractors, all fall outside the Testing Exclusion.

Valley Forge argues that the operative language in the Testing Exclusion is that the property damage "arise out of" an error, omission or a defective or deficient test. Under Florida law, the term "arising out of" is "broader in meaning than the term caused by and means originating from, having its origin in, growing out of, flowing from, incident to or having a connection with." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005) (internal quotation marks omitted). The term "requires more than a mere coincidence between the conduct ... and the injury. It requires some causal connection, or relationship. But it does not require proximate cause." *Id*. at 539–40. Therefore, in evaluating the Testing Exclusion, Valley Forge urges the Court to conclude that all of the alleged wrongful acts "arise out of" the roof testing.

Further, Valley Forge relies on *American Registry of Pathology v. Ohio Casualty Ins. Co*., 461 F.Supp. 2d 61 (D.D.C. 2006); which the Court finds clearly distinguishable. In that case, the parties did not dispute whether the alleged acts constituted or arose out of testing, evaluation, consultation or advice. The dispute in *American Registry* was whether the individual accused of committing the wrongful acts was an "insured" or "acting on behalf of an insured" under a vicarious liability theory.

8

### a. Cases Interpreting the Testing Exclusion

"There is relatively scant case law interpreting the [testing exclusion] or similar insurance policy language." *Emanuel v. Ace Am. Ins. Co.*, CIV.A. ELH-11-875, 2012 WL 2994285, at *9 (D. Md. July 20, 2012). The parties did not cite to any cases within the Eleventh Circuit, but the Court located one case interpreting a testing exclusion: *Dow Chem. Co. v. Royal Indem. Co.,* 635 F.2d 379, 389 (5th Cir. Jan. 26, 1981)[1] (applying Texas law).[2] There, the court examined an underlying complaint which alleged property damage from the insured's failure to conduct adequate testing of its construction. The insurer argued that the allegations fell within the testing exclusion. The court found the language in the testing exclusion[3] ambiguous because "it [did] not indicate when someone has a duty to test, and to what extent this testing should be effected." Therefore, the court held that it was "unable to hold that any evidence in the record as a matter of law support[ed] the application of this exclusion clause under the present circumstances."

In another case that concluded that the language in the testing exclusion was ambiguous, *Century Sur. Co. v. Gene Pira, Inc.,* CV 13-07289 DDP AGRX, 2014 WL 6474987, at *4 (C.D. Cal. Nov. 19, 2014), a plumber conducted a test of a sprinkler system

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[2] Under Texas law, like Florida law, "insurance policies will be interpreted liberally in favor of the insured and ambiguities strictly against the insurer, especially when dealing with exceptions and words of limitation." *Dow Chem. Co.*, 635 F.2d at 386 (citing *Ramsay v. Maryland American General Insurance Company*, 533 S.W.2d 344 (Tex. 1976)). Further, "when the language of the insurance policy is susceptible of more than one reasonable construction, courts should apply that construction which favors the insured and permit recovery." *Id.* (citing *Glover v. Nat'l Insurance Underwriters*, 545 S.W.2d 755 (Tex. 1977)).

[3] The policy excluded from coverage loss due to "(f)aulty workmanship, error, omission or deficiency in respect to the operation or testing of any insured property regardless of to whom attributable." *Dow Chem. Co.*, 635 F.2d at 389.

9

which caused flooding to a penthouse. The court reviewed the "full context in which the general commercial liability Policy was issued," and relied on testimony from the insured's agent that he told the insurer's agent that routine plumbing activities necessarily involved "testing" to ensure completion of the work, and requested omission of the exclusion from the policy.[4] The insurer's agent interpreted the exclusion as not including routine testing, communicated that interpretation to the insured's agent, and issued the policy unchanged. The court concluded that the word "test" as used in the testing exclusion[5] was ambiguous because it could include standalone tests or other tests necessarily conducted in conjunction with other plumbing activities which would ultimately render the coverage illusory.

The aforementioned cases are distinguishable. In this case, the Testing Exclusion as applied to the acts alleged in the Underlying Lawsuits is not susceptible to two or more interpretations. The Court does not see a basis for concluding that the Testing Exclusion is ambiguous, and Driggers offers none.

Other courts that have addressed similar testing exclusions have concluded that they bar coverage. *See, e.g. Scottsdale Indem. Co. v. Hartford Cas. Ins. Co.,* CIV.A. 06-5339, 2008 WL 131105, (E.D. Pa. Jan. 10, 2008). In *Scottsdale Indem. Co.* the insured company, SMS, was hired to perform safety inspections at a construction job site. *Id.* at * 1. A

---

[4] Under California law, "[t]he provisions of a contract must be read in context, taking into account the circumstances of the case and the language of the contract in its entirety." *Universal City Studios Credit Union v. Cumis Ins.*, 208 Cal. App. 4th 730, 737, 145 Cal. Rptr. 3d 650 (2012).

[5] "[The] 'Testing or Consulting Errors and Omissions' exclusion, [] stated that the Policy did not apply to injuries 'arising out of [ ] an error, omission, defect, or deficiency in [ ] any test performed ....' " *Century Sur. Co.*, 2014 WL 6474987, at *1.

construction worker at the site was injured when he fell from a ladder. *Id*. He sued SMS, claiming that the ladder was faulty and SMS's negligent inspection did not reveal the fault before the accident. *Id*. SMS argued that the injury did not "arise out of" an error or omission in its evaluation or consultation. The *Scottsdale Indem. Co.* court rejected that argument and held that coverage was precluded by the testing exclusion (referred to as the "CG 2233 endorsement") stating: "[c]learly, to the extent that SMS's liability derived from its failure to identify and inform the construction company as to the faulty ladder, this was an 'error, omission, defect or deficiency in' an 'evaluation' or 'consultation.' " *Id*. at *6. The court found no ambiguity in the plain meaning of this provision, and stated that since SMS's only function at the site was to perform safety inspections, "[i]t could only have been in this role that SMS was liable." *Id*. at * 6-7.

In *Navigators Specialty Ins. Co. v. Beltman*, 11-CV-00715-RPM, 2012 WL 5378750, at *10-11 (D. Colo. Nov. 1, 2012) the court applied the exclusion and concluded that because the claims against the insureds arose out of the "evaluation" or "consultation" provided in the form of a report and its related documentation, the testing exclusion barred all coverage. *See also AMCO Ins. Co. v. Inspired Technologies, Inc.*, CIV. 08-5748 JRT/FLN, 2012 WL 2395179, at *5 (D. Minn. Jun. 25, 2012) (concluding that allegations fell within testing exclusion where complaint alleged facts that essentially argued that the insured's test was defective or its interpretation of that test was defective).

    **b. Cases Interpreting the Professional and Medical Services Exclusion**

Driggers' argument, that the other alleged acts in the Underlying Lawsuits were not part of the "roof test," is similar to arguments propounded by insureds defending against

11

the "professional services" or "medical services" exclusions. These exclusions typically exclude from coverage injuries to third persons arising out of or caused by the rendering or failure to render "any professional service[,]" *see Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co.*, 890 F.2d 368, 369 (11th Cir. 1989); or " '... [m]edical, surgical, dental, x-ray or nursing service, treatment, advice or instruction ... [or] any health or therapeutic service, treatment, advice or instruction....' " *Colony Ins. Co. v. Suncoast Med. Clinic, LLC*, 726 F.Supp. 2d 1369, 1372 (M.D. Fla. 2010).

In cases involving the professional or medical services exclusions, several courts within this district have held that clerical and ministerial duties, medical transcription transportation of a patient, and administrative duties like hiring medical staff and implementing emergency procedures are "intricate" or "integral" parts of medical services, thereby "arising out of" professional or medical services. Therefore, those allegations fall within the exclusion and bar coverage under the respective CGL policy. *See, e.g. id.* at 1375 (denying coverage under CGL policy's medical services exclusion where allegations stated that insureds failed "to have in place sufficient policies and procedures, staff, and assistive technology to ensure that diagnostic tests and communication between physicians and other medical personnel was performed"); *Alpha Therapeutic Corp.*, 890 F.2d at 371 ("while transposing the test results may be a clerical task, if the test results are transposed improperly, the testing process fails. Clearly, transposing test results and figures is an intricate part of testing plasma for hepatitis, which is a professional service."); *Maryland Cas. Co. v. Florida Atl. Orthopedics, P.L.*, 771 F.Supp. 2d 1328, 1334 (S.D. Fla. 2011) *aff'd*, 469 Fed. Appx. 722 (11th Cir. 2012) ("Hiring medical staff and implementing

appropriate emergency procedures is an intricate part of the provision of medical services, which is excluded from coverage under the policy").

### c. Testing Exclusion Bars Coverage for the Underlying Lawsuits

The Court concludes that the allegations in the Underlying Lawsuits fall within the Testing Exclusion. Based on the allegations in the Underlying Lawsuits, Driggers was hired specifically to perform the roof test on the condominium building. The only reasonable inference drawn from that allegation is that all inspections, monitoring, supervision, and other conduct it performed was in furtherance of that roof flood test. Therefore, the alleged conduct underlying the negligence claims arise directly or indirectly from the roof test, in that the alleged damage was caused by, originated from, had their origin in, grew out of, flowed from, were incident to or had a connection with the roof test.

Driggers' argument to the contrary, that the inspection, monitoring, and supervision are distinct and separate, is unavailing. *See James River Ins. Co. v. Ground Down Engineering*, 540 F.3d 1270, 1275 (11th Cir. 2008) (damages sought by injured party all related to the pollution clean-up, therefore placing the complaint squarely within the CGL policy's pollution exclusion); *Chartis Prop. & Cas. Co. v. Jassy*, 8:12-CV-2087-T-30MAP, 2013 WL 5921541, at *5 (M.D. Fla. Nov. 4, 2013), *appeal dismissed* (Mar. 11, 2014) ("Since the negligence allegation against the [insureds] is based entirely on [] [their] failure to disclose the Chinese Drywall, and [] [they] could only be liable for omissions of material facts of which they were aware at the time of the sale, the claim falls under the intentional act exclusions."); *Am. Cas. Co. of Reading, Pa. v. Superior Pharmacy, LLC*, 8:13-CV-622-T-27TBM, 2015 WL 628382, at *5 (M.D. Fla. Jan. 8, 2015) (concluding that

allegations in underlying complaint fell within policy exclusion when the only reasonable inference from the allegations is that all claims arose from conduct that violated the Telephone Consumer Protection Act, and thus fell within scope of insurance policy exclusion for distribution of facsimiles in violation of statutes). *See also Maryland Cas. Co. v. Florida Atl. Orthopedics, P.L.,* 771 F.Supp. 2d at 1334-35 (labeling insured's argument "specious" when it attempted to separate the act of transporting someone to an emergency facility after surgical complications from the medical procedures which necessitated the transportation in the first place in an attempt to avoid the medical services exclusion).

## III. Duty to Indemnify

Since Valley Forge does not have the duty to defend against the Underlying Lawsuits, it follows that it also has no duty to indemnify. *See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.").

### *Conclusion*

The Court concludes that the language in the Testing Exclusion as applied to the Underlying Lawsuits is unambiguous. Further, the allegations in the Underlying Lawsuits fall squarely within the clear meaning of the Testing Exclusion since all of the alleged acts arise out of the roof test. The absence of Valley Forge's duty to defend the lawsuit results in no duty to indemnify.

It is therefore **ORDERED AND ADJUDGED** that:

1. Valley Forge Insurance Company's Motion for Judgment on the Pleadings (Dkt. #14) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment in favor of the Defendant Valley Forge Insurance Company and against Driggers Engineering Services, Inc.

3. All pending motions are denied as moot and the Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of June, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-3155 judgment on the pleadings.docx

15